IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEHICLE INTERFACE TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FERRARI NORTH AMERICA, INC., <br><br> Defendant. | Civil Action No. 12-1283-RGA |
| VEHICLE INTERFACE TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY, LLC, <br><br> Defendant. | Civil Action No. 12-1284-RGA |
| VEHICLE INTERFACE TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JAGUAR LAND ROVER NORTH AMERICA, LLC. <br><br> Defendant. | Civil Action No. 12-1285-RGA |

VEHICLE INTERFACE TECHNOLOGIES, LLC,

    Plaintiff,

v.

PORSCHE CARS NORTH AMERICA, INC.,

    Defendant.

Civil Action No. 12-1286-RGA

## MEMORANDUM OPINION

Brian E. Farnan, Esq., FARNAN LLP, Wilmington, DE; Michael J. Farnan, Esq., FARNAN LLP, Wilmington, DE; Alexander C.D. Giza, Esq. (argued), RUSS AUGUST & KABAT PLC, Los Angeles, CA; J. Power Hely VI, Esq. (argued), RUSS AUGUST & KABAT PLC, Los Angeles, CA.

    Attorneys for Plaintiff Vehicle Interface Technologies, LLC.

Jason James Rawnsley, Esq., RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Ed Haug, Esq. (argued), FROMMER LAWRENCE & HAUG LLP, New York, NY; Eugene LeDonne, Esq., FROMMER LAWRENCE & HAUG LLP, New York, NY; Christopher Gosselin, Esq., FROMMER LAWRENCE & HAUG LLP, Washington, DC.

    Attorneys for Defendants Ferrari North America, Inc. and Porsche Cars North America, Inc.

Mary Matterer, Esq., MORRIS JAMES LLP, Wilmington, DE; Thomas A. Lewry, Esq. (argued), BROOKS KUSHMAN P.C., Detroit, MI; Rebecca J. Cantor, Esq. (argued), BROOKS KUSHMAN P.C., Detroit, MI.

    Attorneys for Defendant Ford Motor Company, LLC.

John W. Shaw, Esq., SHAW KELLER LLP, Wilmington, DE; Clement Naples, Esq., LATHAM & WATKINS LLP, New York, NY; Cassius K. Sims, Esq., LATHAM & WATKINS LLP, New York, NY.

    Attorneys for Defendant Jaguar Land Rover North America, LLC.

January 13, 2014

*[signature]*

**ANDREWS, U.S. DISTRICT JUDGE:**

Pending before this Court is the issue of claim construction of one disputed term found in U.S. Patent No. 6,842,677 ("'677 patent").

## I. BACKGROUND

On October 5, 2012, Vehicle Interface Technologies, LLC ("Plaintiff") filed separate patent infringement actions against Ferrari North America, Inc, Ford Motor Company, LLC, Jaguar Land Rover North America, LLC, and Porsche Cars North America, Inc. (collectively, the "Defendants"). (Civil Action Nos. 12-1283 to 12-1286[1] at D.I. 1). The Court has considered the Parties' Joint Claim Construction Brief (D.I. 39), appendix (D.I. 40), and oral argument on January 3, 2014. (D.I. 48).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction

---

[1] All subsequent citations are to the 12-1283 docket unless otherwise noted.

3

analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

Finally, "[a] claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l*

*Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

### III. CONSTRUCTION OF DISPUTED TERM

#### A. U.S. Patent No. 6,842,677

1. "wherein the fixed area and the selectable area each comprise a unique and static portion of the display"

    a. *Plaintiff's proposed construction*: "The display includes separate fixed and selectable areas, neither of which is relocated or resized to different portions on the display."

    b. *Defendant's proposed construction*: "Wherein the fixed area and the selectable area have non-overlapping boundaries and the fixed area does not display any of the plurality of pages and the selectable area does not display vehicle information."

    c. *Court's construction*: "Wherein the fixed area and the selectable area have non-overlapping and non-moving boundaries and the fixed area does not display any of the plurality of pages."

Although VIT stands by its original construction, it noted during oral argument that it agreed with, or at least did not dispute, the following construction: "wherein the fixed area and the selectable area have non-overlapping and non-moving boundaries and the fixed area does not display any of the plurality of pages." (D.I. 48 at 88-91). The Court also agrees with this construction and the only remaining question is whether to include the additional limitation that a selectable area cannot display vehicle information, as the Defendants propose. The Court does not believe that its inclusion is necessary.

The current dispute revolves around the meaning and legal effect of an argument made by the patentee to overcome a prior art reference. The reference, Hartman, displayed vehicle

5

information and selectable information in the same display area. The prosecution history explains:

> Additionally, the combination of Figs. 2 and 3 of Hartman fail to disclose the claimed display. In particular, Fig. 3 of Hartman shows the display of Fig. 2 altered in order to show additional information on a trip. However, as is clearly shown by the combination of Figs. 2 and 3, Hartman's display does not have two areas—(1) a fixed area for displaying vehicle information, and (2) a selectable area for displaying one of a plurality of pages. During the telephone interview, the Examiner indicated that the claimed fixed area and selectable area could comprise the same area. While Applicant disagrees with this interpretation, Applicant has herein amended claims 1, 7, and 16 to clarify that the fixed area and selectable area each comprise a unique and static portion of the display. In sharp contrast, the vehicle information in Hartman is relocated and/or resized to different portions of the display in order to accommodate the new information. See, e.g., Figs. 2 and 3; Col. 3, lines 47-65. As a result, Applicant respectfully submits that the Hartman [reference] fails to disclose the claimed display.

(D.I. 40-2 at 9). The context of this passage makes it clear that it is the fixed and selectable areas that must be separate, and not necessarily the content in those respective areas. That separateness is the distinction drawn by the patentee in attempting to overcome the Examiner's objection—*i.e.*, that the patentee's invention uses two separate displays for the information instead of the single display employed by Hartman. Moreover, consistent with the patentee's argument in the prosecution history, the vehicle information at issue here is not "relocated and/or resized to different portions of the display," as was the case with Hartman. The vehicle information displayed in the fixed area does not change, and it is not relocated or resized within the fixed area itself, nor is it relocated or resized to the selectable area. Nothing in the prosecution history, however, can be read to prohibit the inclusion of vehicle information in the selectable area in addition to the vehicle information displayed in the fixed area.

The claim language also belies the Defendant's position. Claim 1 recites:

6

> A user interface system for a vehicle having a steering device, the system comprising:
> ... a display mounted behind the steering device, the display including a fixed area and a selectable area, wherein the fixed area displays vehicle information and the selectable area displays one of the plurality of pages, and wherein the fixed area and the selectable area each comprise a unique and static portion of the display.

'677 patent, claim 1. Again, the focus of the claim language is on the area of the displays. The words unique and static here modify the two areas within the display, not the content being displayed. The requirement that the areas "comprise a unique and static portion of the display" is satisfied when the fixed and selectable areas have non-overlapping and non-moving boundaries within the overall display. It is true that the claim language states that the fixed area displays vehicle information, but nowhere does the claim impose a requirement that supplemental or even redundant vehicle information cannot be displayed in the selectable area.

Finally, the specification itself has examples of vehicle information being included in the selectable area. The patent discusses a fixed area depicting vehicle information and a selectable area displaying a plurality of pages that correspond to optional subsystems. *Id.* at 3:29-32 ("Fixed area 20 displays vehicle information, while selectable area 22 displays one of a plurality of pages that include at least one parameter for one or more optional subsystems installed in vehicle 10."). The specification provides several examples of vehicle information, including: vehicle speed, current mileage, engine temperature, amount of gas remaining, revolutions per minute, fuel efficiency, etc. *Id.* at 4:3-9. However, the selectable area shown in Figure 2 of the '677 patent has several selectable options that can fairly be considered vehicle information. These options include air conditioning and heating, lights, wipers, and "doors/windows/screens." *Id.* at Fig. 2. This suggests that the selectable area could indeed display vehicle information. If

7

there were any doubt about it, Figure 2 shows in the fixed area "total miles" and "trip" mileage, and the selectable area has a page for "cruise & trip odo," which can only be the same "total miles" and "trip" mileage. Therefore, the Court is reluctant to read the prosecution history in a way that causes it to directly conflict with one of the patent's own figures. This reluctance is especially warranted where, as is the case here, the patentee distinguished the prior art in a way that is not inconsistent with the plain meaning of "unique and static" as used in the claim term.

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury. The proposed order should include any other constructions to which the parties agreed, or as ordered by the Court at the *Markman* hearing.